TURNER *v.* OLYMPIAN HILLS INCORPORATED *et al.*

No. 11700. APRIL 16, 1937.

*Mitchell & Mitchell,* for plaintiff.
*Jones, Powers & Williams,* for defendants.

BECK, Presiding Justice. J. W. Turner brought his petition against H. H. Turner, L. L. Jones, and Olympian Hills Inc., and alleged that H. H. Turner and L. L. Jones were partners in building a house on a lot in Olympian Hills. E. R. Gallimore had agreed to purchase this lot from H. H. Turner and L. L. Jones, and Turner and Jones were to furnish Gallimore $2500 with which a house was to be constructed on plans furnished by L. L. Jones and H. H. Turner. In pursuance of this agreement Gallimore started the building, and H. H. Turner obtained $2500 from the plaintiff, who was his brother, which he gave to Gallimore with the knowledge, consent, and approval of L. L. Jones. Gallimore used the money of the plaintiff to finish the house according to contract, and Gallimore gave H. H. Turner and L. L. Jones a security deed on the lot, to secure the payment of the $2500. Gallimore was unable to pay the $2500, and H. H. Turner and L. L. Jones sued him on the notes, and obtained a judgment with a special lien on the property. Gallimore went into bankruptcy, and in the Federal court an equity suit was filed, seeking to enjoin the foreclosure in the State court. Clarence Calhoun, receiver for

Gallimore in the State court, H. H. Turner, L. L. Jones, and all of Gallimore's creditors were parties to the case. The restraining order was refused, and the property was levied on, sold by the sheriff, and bid in by Olympian Hills Inc. H. H. Turner and L. L. Jones are the incorporators and sole stockholders of Olympian Hills Inc. Because of repeated assurances of H. H. Turner and L. L. Jones that they would settle with him when the Gallimore case was concluded, and give him a return of or security for his money, the plaintiff did not bring any action. He brought an action only when defendants repudiated all liability to him. When H. H. Turner obtained the $2500 which he gave to Gallimore to build the house, he promised the plaintiff that he would give him a note for the amount so obtained, and would give him a security deed as a first lien on the property. He failed to do this, and two months later gave to the plaintiff, J. W. Turner, a receipt reading as follows: "Received of Jno. W. Turner twenty-five hundred fifty dollars. He is interested pro rata in E. R. Gallimore deal to that extent with L. L. Jones and H. H. Turner." At the time the receipt was given, H. H. Turner informed J. W. Turner that the "Gallimore deal" referred to the improvement of the lot in Olympian Hills, above referred to. There had been a previous deal between the defendants and Gallimore, but the plaintiff did not know of it, and was not informed of it, and claims no interest in it. He asks that his interest in the lot above referred to be set up by decree of court.

The foregoing statement of the facts is taken from the brief of counsel for the plaintiff, which counsel for the defendants admit is a fair statement, but suggest that the following paragraphs of the petition should be added: (6) "At the time this money was obtained, H. H. Turner informed J. W. Turner that he and L. L. Jones would give J. W. Turner a security deed to the land described in paragraph two (2) of this petition" (the lot in Olympian Hills on which it was proposed to build the house). (7) "On the strength of this assurance J. W. Turner gave his money to H. H. Turner, and H. H. Turner, with the knowledge, consent, and approval of L. L. Jones, turned over said money to E. R. Gallimore in accordance with the terms of the contract between E. R. Gallimore and L. L. Jones and H. H. Turner." (11) "On July 20th, 1926, H. H. Turner gave to J. W. Turner

the following receipt [quoted above], this being the only written evidence of the facts stated above that was ever given to petitioner by defendants." The court sustained general demurrers to the petition, and the plaintiff excepted.

The plaintiff contends that under the facts a trust was created in his favor, and, if no express trust was created, that there was an implied trust; and prayed that the court so decree. In express words the plaintiff prayed: "That this court by its decree set up and establish the trust in his favor for said proportionate interest in said property, and determine the quantity of such interest, and find and declare the legal title thereof to be in this petitioner; that when petitioner's interest in said property is determined, a certificate of title issue to him showing his interest." The plaintiff is not entitled to have the decree sought. No trust, either express or implied, was created by the agreement between him and his brother, H. H. Turner. Certainly there was no express trust. An express trust must be created in writing, and the property in which it is created must be described. Code, § 108-105. And no elaboration of this proposition is necessary.

Was there an implied trust so as to authorize the court to grant the decree sought? This question also must be answered in the negative. In *Magid* v. *Byrd,* 164 *Ga.* 609 (139 S. E. 61), it was said: "Implied trusts arise in the following cases: (1) Whenever the legal title is in one person, and the beneficial interest, arising from the payment of the purchase-money, either wholly or partially, is in another. (2) Where from any fraud one person obtains the title to property which rightly belongs to another. (3) Where from the nature of the transaction it is manifest that it was the intention of the parties that the person taking the legal title shall have no beneficial interest." "The person in whose favor a trust is claimed to result must pay the purchase-money as his own; if he merely advances it as his own, no trust will result." Bispham's Equity, § 81. This last was quoted with approval in *Johnston* v. *Coney,* 120 *Ga.* 767, 776 (48 S. E. 373). In the case before us the money was advanced as a loan, as the record shows. It is true that afterwards there was some expression used by the defendants that the plaintiff would have an interest in the "Gallimore deal." We do not think that any of the allegations in the petition in this case, when considered in connection with all the

facts, created a trust express or implied. And it is unnecessary for us to decide whether or not the plaintiff might, if not barred by the statute, have maintained an equitable suit for specific performance. Certainly he could have sued and obtained a judgment upon the loan made, if he had brought his action in time. We do not decide whether such a suit was barred by the statute or not. Under what is ruled above, it is clear that the court did not err in sustaining a general demurrer and dismissing the case.

*Judgment affirmed. All the Justices concur, except* Russell, C. J., who took no part in the opinion or judgment.